MILES M. O'BRIEN and Another, as Receivers of THE MADISON SQUARE BANK, Appellants, *v.* RONALD T. McDONALD and Another, Respondents.

*Action on promissory notes — the notes must be construed with the agreement under which they are held — how an agreement illegal, ultra vires or contrary to public policy is avoided.*

Where notes are the offspring of an agreement, and are connected therewith and form part and parcel of the same transaction, the rights and obligations of the parties to the notes, as between themselves, are regulated by the terms of the agreement. The holder of the notes cannot enforce one part of the contract, the notes, and be relieved from the obligations of another part of the contract, the agreement.

When the makers and indorsers of certain notes enter into a contemporary agreement in respect thereto with the bank by which they were discounted; if such agreement is illegal or beyond the power of the bank to make, the only way in which the bank can escape its obligations under the agreement is to rescind the same, return what it has received in pursuance thereof and place the parties in the position in which they were before the agreement was made, or at least offer to do so.

Even where a portion of a contract is *ultra vires,* a corporation cannot recover upon that portion of the contract which it claims to be within its powers and repudiate the balance as *ultra vires.*

The fact that one portion of a contract is contrary to public policy gives to a party thereto the right to demand a rescission of the whole contract, but such party cannot, while insisting upon the illegality of one part, enforce any other portion of the contract.

An action brought upon promissory notes constitutes an election on the part of the plaintiffs therein to place their right of recovery upon such notes, and no matter what ultimate right they may have, unless they are entitled to recover upon such notes, by reason of the provisions of the notes themselves, no recovery can be had in the action.

APPEAL by the plaintiffs, Miles M. O'Brien and another, as receivers of The Madison Square Bank, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 17th day of March, 1894, upon the dismissal of the complaint after a trial by the court without a jury at the New York Circuit.

*Louis Marshall,* for the appellants.

*W. B. Putney,* for the respondents.

Van Brunt, P. J.:

This action was brought to recover upon two promissory notes made by one Ronald T. McDonald to the order of the Fort Wayne Electric Company, and indorsed by said company, and thus indorsed delivered to the Madison Square Bank of which the plaintiffs are receivers.

There is no dispute as to the facts established by the evidence, the controversies arising as to the deductions to be drawn therefrom. It appears that prior to January 27, 1891, the Madison Square Bank had taken proceedings to increase its capital stock and to issue and sell the same; and the bank requested the defendant, the Fort Wayne Electric Company, to purchase a certain amount of such increased stock, to wit, 1,000 shares. Negotiations were had which resulted in an agreement that said company should buy said 1,000 shares of stock at $150 per share, in consideration of the bank making a certain agreement in writing as follows:

"This agreement, made this 27th day of January, 1891, by and between R. T. McDonald, of Fort Wayne, Indiana, and New York, party of the first part, and the Madison Square Bank of the city of New York, a corporation organized under the laws of the State of New York, party of the second part;

"Witnesseth, That in consideration of the discount by the party of the second part of three promissory notes of the party of the first part, each for fifty thousand dollars and interest, and each payable in six months from date thereof, made payable to and indorsed by the Fort Wayne Electric Company, the said party of the first part agrees to and does, at the time of the execution hereof, deposit with the said party of the second part bonds of the Louisiana Electric Light Company, a corporation organized and doing business in New Orleans, in the State of Louisiana, to the amount, at par, of two hundred thousand dollars, with interest coupons thereto attached, as collateral security for the payment of said notes, and of notes which may be given in renewal thereof, upon the following terms and conditions, to wit:

"The said bonds are a part of an issue of bonds amounting to $600,000, and the party of the second part is to have the right to sell and pledge bonds, or any part thereof, at any time while the

said notes, or notes given in renewal thereof, shall be outstanding, and shall account for the proceeds of any such sale to the extent of ninety per cent of the face value of the bonds sold and no more. After having sold the said pledged bonds the said party of the second part shall have the right at any time while this contract remains in force and not fully performed to sell any other bonds of the same issue then owned and held by the party of the first part at and for a price or sum not less than ninety per cent of their face value, and in such case the party of the second part shall account for the proceeds of the bonds so sold to the extent of ninety per cent of their face value, and in consideration of the premises the party of the second part agrees that the party of the first part shall not be called upon to pay his said notes until the said two hundred thousand dollars of pledged bonds shall have been sold, otherwise than by giving renewal notes therefor from time to time as the notes held mature, the party of the second part agreeing to accept such renewal notes for the said one hundred and fifty thousand dollars from time to time, until the said pledged bonds shall have been sold or mature.

" The party of the second part is to receive the interest on the pledged bonds so long as it shall hold the same and apply said interest on account of said notes.

" It is further agreed that the party of the first part shall also have a right to effect the sale of the said pledged bonds at any time, but in such case the party of the second part is to receive the proceeds thereof and to apply the same so far as required in payment of said discounted notes, or notes given in renewal thereof," and in consideration of its discounting for the said company the three notes mentioned in said agreement and payable under and pursuant to the terms thereof.

Thereupon, and as part and parcel of the transaction, the said company delivered to the bank, together with the said three notes, each for $50,000, bonds of the Louisiana Electric Light Company of the par value of $200,000 as and for security for the payment of said notes or the notes which were to be given in renewal therefor in accordance with the terms of the contract first above set forth. Thereupon said bank credited the said

Fort Wayne Electric Company with the proceeds of said notes, and a draft or check was made by said company as against said credit and in favor of the bank for said $150,000, the purchase price of said shares of stock, and the stock was thereafter delivered to said Fort Wayne Electric Company. The bonds in question have never been sold. The defendants gave, and the bank received, renewal notes down to December, 1893, the date of the maturity of the note set forth in the complaint, when the defendants tendered new renewal notes which were refused by the plaintiff.

It further appeared that no money ever passed between these parties in respect to this transaction, and that on the 9th of February, 1891, the transaction was reported to the board of directors of the bank at a regularly called meeting, and by it formally approved; and it was further ordered at this meeting that the bank's counsel should examine this agreement as to its legality. At a meeting on March 9, 1891, a communication was presented from the bank's counsel in response to the resolution passed at the meeting of February 9, 1891, and a resolution was introduced that McDonald be requested to amend his agreement so that the loans made to him be in conformity with the counsel's recommendation, and that the maturity of the loan be fixed at some reasonable and definite period. The notes were renewed from time to time and the old notes surrendered, the board of directors not passing upon the renewal before the renewal notes were executed, but approving of the same afterwards.

Upon this state of facts the court held that no right of recovery as to the notes existed in the plaintiffs and dismissed the complaint, and from the judgment thereupon entered this appeal is taken.

It is urged that the burden of proof rests upon the defendants to establish the execution of a valid contract whereby the defendants became entitled to a renewal of their obligation to the bank until such time as the bonds of the Louisiana Electric Light Company, pledged as security, could be sold at ninety per cent of their face value, and that the contract was not authorized by the directors of the bank, and was, therefore, ineffectual as an agreement to extend the time of payment of the indebtedness owing by the defendants to the plaintiffs. In regard to these propositions it seems to be sufficient to say that the bank came into possession of these obliga-

tions upon the part of the defendants by virtue of that contract. They came into possession of these bonds, which they have ever since the date of the contract held, and upon which they have collected the interest, and neither the bank nor its receivers have made any effort whatever to rescind the contract and place themselves upon what legal rights the transaction might give them, independent of the obligations arising out of the contract. The notes being the offspring of the agreement, connected therewith and forming part and parcel of the same transaction, the rights and obligations of the parties to the notes, as between themselves, are regulated by the terms of the agreement; and these plaintiffs cannot enforce one part of the contract, viz., the notes, and be relieved from the obligations of another part of the contract, viz., the paper which is styled the agreement. It is a familiar principle that papers forming part of the same transaction must be read together. Hence, when the question as to the liability of the defendants upon the notes is to be determined, it must be gauged not only by the contents of the notes themselves but of the agreement of which they formed a part. The makers and indorsers of these notes entered into an agreement with this bank by which the lattter received the notes. If that agreement was illegal or beyond the power of the bank to make, then the only way in which the bank can escape its obligations under the agreement is to rescind the same, return that which it has received in pursuance thereof, and place the parties in the position in which they were before the agreement was made, or at least offer to do so. But the receivers of the bank, representing the bank, claimed to hold all that they got under the agreement and all the rights which the contract gives to them without being bound at all by the obligations entered into upon the part of the bank. We do not understand, even where a portion of a contract is *ultra vires*, that a corporation can recover upon that portion of the contract which it claims to be within its powers and repudiate the balance as *ultra vires*.

The same reasoning will apply to the further claim that, assuming the alleged contract to be authorized by the directors, it nevertheless has no binding force upon the plaintiffs since the contract as made is contrary to public policy. The most that such a condition

of affairs, even if it existed, would give to the bank would be the right of rescission; and as has already been observed there has been no attempt to rescind; and they are now seeking to enforce a part of this very contract which, according to their claim, is obnoxious to public policy.

This reasoning also applies to the claim that the contract was illegal and that in consequence thereof the plaintiffs are entitled to the immediate payment of the money received by the defendants as money had and received by them for the use of the bank, and can enforce the notes in suit given as security for such indebtedness without regard to the terms of the agreement pleaded in the answer. As suggested by the court below, this is not an action for money had and received, but an action upon the notes, and the plaintiffs can only succeed by reason of the validity of these notes. They have chosen to place their right of recovery upon these notes; and no matter what ultimate rights the bank may have, unless they are entitled to recover upon these notes by reason of the provisions of the notes themselves, no recovery can be had in this action. As already demonstrated, no right of recovery exists upon these notes, because they are part and parcel of a contract which the bank has not fulfilled, which contract, if illegal, the bank has not attempted to rescind, but has retained all that it received under it, and now proposes, while claiming to be relieved from its own obligation, to enforce the obligation of the other party to the contract. No such rule of law has as yet obtained in this State.

The claim made, that there was some misrepresentation in regard to the amount of the issue of the bonds, a part of which were pledged, rests upon precisely the same foundation. If the bank claims to be relieved because of such misrepresentation, which certainly is not entirely apparent upon the face of the contract, they might have had the right to rescind or to sue for any damages sustained by reason of such misrepresentation. But they have done neither. They simply proposed to compel these defendants to keep their part of the contract without being bound, as already stated, by the terms of the contract in respect to their own obligations.

We think, therefore, that the court below was entirely right in dismissing the complaint in this case; and, furthermore, that the

rights of the parties do not depend upon the question as to whether the. transaction in regard to this money was a mere matter of book-keeping or not. That may be a matter of importance when the question as to the rights of these receivers comes up in a different form.

The judgment should be affirmed, with costs.

FOLLETT and PARKER, JJ., concurred.

Judgment affirmed, with costs.

